**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

TIMOTHY M. CONNER,

                *Plaintiff,*

v.                              CIVIL ACTION NO.  2:19-cv-00329

ASSOCIATED RADIOLOGISTS, INC., et al.,

                *Defendants.*

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to dismiss by Defendants Associated Radiologists, Inc. ("ARI"), Associated Radiologists, Inc. Defined Benefit Plan ("DB Plan"), Shelby King ("Ms. King"), John J. Anton, M.D., Michael E. Anton, M.D., Stephen M. Elksnis, M.D., and Johnsey L. Leef, III, M.D. (collectively, "Defendants"). (ECF No. 7.) For the reasons discussed below, the motion, (ECF No. 7), is **GRANTED IN PART** and **DENIED IN PART**.

*I.     BACKGROUND*

Plaintiff Timothy M. Connor, M.D., ("Plaintiff") is a radiologist and former employee, shareholder, officer, and director of ARI. (ECF No. 1 at 1 ¶ 1.) In 2017, Plaintiff entered into an employment agreement with ARI, which specified his salary, bonus, severance pay, and pension rights, as well as his obligations as an employee of ARI. (*Id.* at 3 ¶¶ 11, 12.) The retirement benefits afforded to Plaintiff under the agreement included a defined contribution plan and the DB Plan, managed by Massachusetts Mutual Life Insurance Company ("MassMutual"). (*Id.* 2 ¶ 3, 3 ¶ 13.) Ms. King is a certified public accountant employed by ARI as its current Business

Manager, and in this capacity administers certain aspects of the DB Plan. (*Id.* at 2 ¶ 4.) John J. Anton, M.D., Michael E. Anton, M.D., Stephen M. Elksnis, M.D., and Johnsey L. Leef, III, M.D. (collectively, "Physician Defendants"), are also shareholders, directors, and employees of ARI, (*id.* ¶¶ 5, 6), and serve with Ms. King on the Executive Committee of ARI, which is responsible for handling "personnel, compensation, and benefit" administration, (*id.* ¶ 7).

On March 30, 2018, Plaintiff informed ARI that he would resign on December 31, 2018. (*Id.* at 4 ¶ 15.) At that time, Plaintiff believed, "based on documentation provided by MassMutual, by and through ARI, (and also based on what was reported by MassMutual in his online account)," that the value of his DB Plan account exceeded $1,000,000.000. (*Id.* ¶ 19.) In planning for Plaintiff's resignation, ARI contributed funds to the DB Plan so that Plaintiff could receive the entire value of his DB Plan as a lump sum payment. (*Id.* at 5 ¶ 21.) "[I]n reliance on the explicit assurance that he would have access to his entire lump sum on December 31, 2018 (and that the modest contribution necessary to effectuate that assurance had indeed been paid), [Plaintiff] accordingly made no changes to his existing plan to formally retire on December 31, 2018, and left his money in the DB Plan." (*Id.* ¶ 25.)

Plaintiff continued working and was informed in November 2018 "that a series of 'miscommunications' with MassMutual dating back to 2013 and continuing throughout the years afterward had caused the substantial and material underfunding of the DB Plan." (*Id.* at 8 ¶ 38.) As a result, "ARI took actions to freeze the DB Plan" and required Plaintiff to pay $330,000.00 to fund the plan. (*Id.* at 9 ¶ 40.) On November 16, 2018, Plaintiff was "informed that he would not receive his salary for November and December[.]" (*Id.* ¶ 44.) Plaintiff, therefore, resigned from ARI effective that same day. (*Id.* at 10 ¶ 45.) ARI subsequently paid Plaintiff his salary for the

first half of November but denied him severance pay.  (*Id.* ¶ 47, 11 ¶ 52.)   Further, Plaintiff could not access the funds in his DB Plan account, an amount less than he was assured to be paid, from November 2018 to February 2019 because the plan had been terminated.  (*Id.* ¶ 49.)   On April 26, 2019, Plaintiff filed the instant suit asserting various ERISA claims and state law claims for negligence, breach of fiduciary duty, breach of contract, violations of the West Virginia Wage Payment and Collection Act ("WVWPCA"), W. Va. Code § 21–5–4, *et seq.*, conversion, and civil conspiracy.   Defendants filed the present motion to dismiss on June 7, 2019.  (ECF No. 7.) Plaintiff timely responded, (ECF No. 14), and Defendants timely replied, (ECF No. 16).   As such, the motion is now fully briefed and ripe for adjudication.

## II.     *LEGAL STANDARD*

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).   To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face."   *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.   Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'"   *Woods v. City of Greensboro*, 855 F.3d 639,

647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Ms. King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, the court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [the court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

### III.    DISCUSSION

#### A.    Count One – ERISA § 502(a)(1)(A)

In Count One of the Complaint, Plaintiff alleges a violation of ERISA's plan production requirement under 29 U.S.C. § 1024(b)(4). (*See* ECF No. 1 at 12 ¶¶ 57–62.) 29 U.S.C. § 1024(b)(4) provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the . . . instruments under which the plan is established or operated." Specifically, Plaintiff alleges that on November 19, 2018, he "requested all paperwork that was

necessary for him to assess the status of his retirement benefits, access those funds, and roll over both his DB Plan account and his Defined Contribution Plan into another qualified plan" but that his request "was not answered within 30 days." (ECF No. 1 at 10 ¶ 46.) Thus, he asserts that he is entitled to the daily penalty provided under ERISA § 502(c). *See* 29 U.S.C. 1132(c)(1) (providing that "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day . . . .").

Defendants counter that because Plaintiff's November 19, 2018, request was not made in writing, the statutory penalty is not available, and his claim must be dismissed. (ECF No. 8 at 3.) The Court agrees and finds it is fatal to Plaintiff's claim that he does not specifically allege that his request for information under the DB Plan was made in writing as required by 29 U.S.C. § 1024(b)(4). *See, e.g., Cohen v. Independence Blue Cross*, 820 F. Supp. 2d 594, 609 (D. N.J. 2011) (noting a written request "is an essential requirement under 29 U.S.C. § 1024(b)(4)" and dismissing claim for failure to timely provide plan information because the plaintiffs did not allege that the beneficiary made any written requests for documents); *Professional Orthopedic Associates, PA v. Excellus Blue Cross Blue Shield*, No. 14–6950, 2015 WL 4387981, at *14 (D.N.J. July 15, 2015) (relying on *Cohen* and finding that the "failure to allege that the plan beneficiary made the written request is fatal to Plaintiffs' claim under § 503(c)."); *Ernisse v. L.L. & G., Inc.*, No. 07–2579, 2008 WL 4499974, at *6 (D. Kan. Sept. 29, 2008) (same); *Powers v. AT&T*, No. 15–cv–01024, 2015 WL 5188714, at *7 (N.D. Cal. Sept. 4, 2015) (noting that whether requests for information were

5

in writing is a necessary detail to state a claim for a Section 502(c) violation).  Accordingly, Defendants' motion is **GRANTED** insofar as it seeks to dismiss Count One for failure to state a claim upon which relief can be granted.[1]

B.     *Count Two – ERISA § 502(a)(1)(B)*

In Count Two, Plaintiff asserts a claim under § 502(a)(1)(B) to recover the value of his DB Plan in full.  Specifically, Plaintiff alleges that Defendants assured him he would receive a lump sum payment of the entire value of his benefits but, despite this assurance, the value of his funds decreased by $127,512.78 due to Defendants' mismanagement of the DB Plan.  Therefore, he seeks to recover this lost balance.  (ECF No. 1 at 13 ¶¶ 63–68.)

Defendants make two arguments in support of their proposition that the allegations in the Complaint do not support a claim under § 502(a)(1)(B).  First, they contend that Plaintiff has not exhausted the administrative remedies required under the DB Plan Summary Plan Description.  Second, they argue that the Complaint does not assert a cognizable claim because Plaintiff has not established that the lost balance was due to some malfeasance or nonfeasance on the part of Defendants.  (ECF No. 8 at 3–4.)

Relying on *Smith v. Sydnor*, 184 F.3d 356 (4th Cir. 1999), Plaintiff, first, argues that the DB Plan's exhaustion requirement does not apply to his claim.  In *Smith*, the Fourth Circuit held

---

[1] In response to Defendants' motion to dismiss, Plaintiff attaches two emails exchanged between Plaintiff and Ms. King to support his claim that a written request was made.  (ECF No. 14-1.)  While a court is free to consider documents attached to a motion to dismiss "so long as they are integral to the complaint and authentic," *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009), the Complaint here makes no reference to these emails or a written request whatsoever.  Even if the Court were to consider these documents, they offer no facts from which the Court can reasonably infer that a written request was made.  The first email, dated November 19, 2018, is from Plaintiff to Ms. King and states the following: "Should I stop by the office today and pick up paperwork or is there a form being mailed to me?  Do I need destination account set up right as paperwork is filed?"  (*Id.* at 2.)  In the second email, Ms. King advises Plaintiff that the paperwork is being mailed to him directly and that she can sign as the plan administrator.  (*Id.* at 4.)  Whether these documents serve as a written request for Plaintiff's DB Plan information is an issue of fact that would otherwise be more appropriate for summary judgment.

that exhaustion is not required when ERISA claims are statutory and not based on the plan administrator's denial of benefits. *Id.* at 362–63 (holding that administrative remedies must be exhausted "before bringing a claim for breach of fiduciary duty in federal court where the basis of the claim is a plan administrator's denial of benefits or an action by the defendant closely related to the plaintiff's claim for benefits, such as withholding of information regarding the status of benefits.") There, the plaintiff did "not challenge a denial of benefits or an action related to denial of benefits, but rather the conduct of [the fiduciaries] that he claims [ ] lowered the value of his and the other participants' 401(k) Plan accounts." *Id.* at 363. Thus, the court concluded that the plaintiff asserted valid claims for breach of fiduciary duties because the resolution of the claims rested upon an interpretation and application of ERISA rather than upon the plan. *Id.* at 362. As such, the plaintiff was not required to exhaust the plan provisions before filing suit for breach of fiduciary duties.

Like in *Smith*, Plaintiff, here, claims that Defendants' conduct lowered the value of his DB Plan account. Plaintiff alleges that MassMutual provided financial records and an online account statement reflecting a total estimated balance of $1,051,210.81 to his individual account during the January to June 2018 period. (ECF No. 1 at 4–5 ¶ 19, 8 ¶ 36.) He alleges that because Defendants elected to freeze or terminate the plan in November 2018, (*id.* at 6 ¶ 29), the DB Plan funds no longer accrued benefits as of the date of the freeze through February 2019, (*id.* at 10 ¶ 49, 11 ¶ 50). Plaintiff, therefore, claims that the value of his plan decreased and he "is entitled to recover the lost balance." (*Id.* at 13 ¶¶ 66, 68.) He further claims that his low return under the DB Plan was "attributable, in substantial part, to the negligent mismanagement and negligent miscommunication" by ARI, Ms. King, and MassMutual. (*Id.* at 11–12 ¶ 56.)

While Plaintiff frames Count Two as a claim under § 502(a)(1)(B) to recoup benefits denied under the DB Plan, it appears he intends to advance this claim to hold the fiduciaries liable for actions that allegedly reduced the value of the DB Plan and recover his lost balance. This claim does not require this Court to interpret and apply the terms of the DB Plan as would be necessary under a claim for benefits. To determine liability for the alleged mismanagement of the DB Plan, the Court would only need to evaluate whether the Defendants' actions were wrongful under ERISA. As established in *Smith*, the Court agrees with Plaintiff that he is not required to exhaust his administrative remedies where his claims rest upon compliance with ERISA.

Turning to Defendants' next argument, the Court finds that Plaintiff does not need to establish at the pleading stage that the lost balance was due to some malfeasance or nonfeasance on the part of Defendants. The Complaint need only plead some facts that "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Plaintiff satisfies this requirement by alleging throughout his Complaint that his low balance was "attributable, in substantial part, to the negligent mismanagement and negligent miscommunication" by ARI, Ms. King, and MassMutual. (*Id.* at 11–12 ¶ 56.)

Nonetheless, such a claim is typically pled as a claim for breach of fiduciary duty under § 502(a)(2) rather than a claim under § 502(a)(1)(B). *See* 29 U.S.C. § 1132 (a)(2) (providing a civil action "for appropriate relief under section 1109" for breach of a fiduciary duty); *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008) (holding that "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."); *Marks Const. Co., Inc. v. Huntington Nat'l Bank*, 614 F. Supp. 2d 700 (N.D.

W. Va. 2009) (holding that § 502(a)(2) of ERISA authorizes recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account where the alleged fiduciary misconduct relating to defunct plan occurred before the termination of the plan); *Smith*, 184 F.3d at 363 (finding that the plaintiff's claim under § 502(a)(2) challenges "the conduct of [the defendants] that he claims has lowered the value of his" plan). *But see Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) (holding that a participant in a disability plan could not bring suit under § 502(a)(2) to recover consequential damages arising from delay in the processing of her claim because § 502(a)(2) "provid[es] remedies that would protect the entire plan rather than individuals" (internal quotation omitted)). The Court is not aware of any cases where similar claims were brought under § 502(a)(1)(B), and Plaintiff has not directed the Court to any. Moreover, "any recovery under § 502(a)(2) must be for the plan as a whole rather than for individual beneficiaries." *Coyne & Delany Co. v. Blue Cross & Blue Shield*, 102 F.3d 712 (4th Cir. 1996) (citing *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)). Thus, the Court cannot recast Plaintiff's claim, which seeks to recoup only his individual losses, as one brought under § 502(a)(2). Accordingly, the motion to dismiss Count Two is **GRANTED**.

C.     *Count Three – ERISA § 502(a)(3)*

In Count Three, Plaintiff claims that Defendants breached their fiduciary duties under the DB Plan. Specifically, Plaintiff alleges that ARI "has a fiduciary duty as Plan sponsor to operate the DB Plan" in accordance with ERISA, (ECF No. 1 at 14 ¶ 70), that Ms. King, "as plan administrator, has a fiduciary duty to administer the DB Plan in accordance with" ERISA, (*id.* at 15 ¶ 75), and that "all the Defendant Physicians, respectively, have a fiduciary duty to one another as shareholders and directors of ARI." (*Id.* ¶ 77.) Plaintiff alleges that ARI was acting as a

fiduciary and breached its fiduciary duties by misleading Plaintiff about his ability to access his benefits on the date of his resignation, failing to prudently communicate and manage the DB Plan with MassMutual, which resulted in underfunding of the plan, and terminating the DB Plan. (*Id.* ¶¶ 71–73.) Plaintiff also claims that Ms. King and the Defendant Physicians breached their fiduciary duties because they acted in concert with ARI and played an "active and intentional role" in ARI's behaviors. (*Id.* at 15 ¶¶ 75–78.) Defendants argue that Plaintiff fails to allege a breach of fiduciary duty because these alleged acts are purely administrative and were not taken in a fiduciary capacity. (ECF No. 8 at 4–6.)

On a motion to dismiss, "the threshold question is whether the plaintiff has sufficiently alleged that the defendant was a 'fiduciary.'" *Moon v. BWX Techs., Inc.*, 577 F. App'x 224, 229 (4th Cir. 2014) (citing *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60–61 (4th Cir. 1992)). Two general types of fiduciaries exist under ERISA. *See Dawson-Murdock v. National Counseling Group, Inc.*, 931 F.3d 269, 275 (4th Cir. 2019) (citations omitted). The first type of fiduciary contemplated by ERISA is a "named fiduciary," who is named in the plan documents. *Id.* (citing 29 U.S.C. § 1102(a)(2)). The second type is a "functional fiduciary." *Id.* at 276. Under ERISA, a person is a "functional fiduciary" to a plan when:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, . . . with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). In summarizing the two types of fiduciaries, the Fourth Circuit has explained that "the concept of a fiduciary under ERISA . . . includes not only those named as fiduciaries in the plan instrument, . . . but [also] any individual who *de facto* performs specified

discretionary functions with respect to the management, assets, or administration of a plan." *Id.* (citing *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996)).

Pursuant to ERISA, a person is a fiduciary "only to the extent that he acts in such a capacity in relation to a plan." *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000) (citing 29 U.S.C. §1002(21)(A)); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890–91 (1996) (holding that a person becomes a fiduciary within the meaning of the statute only "when fulfilling certain defined functions" (internal quotation omitted)). An employer's status as "an ERISA plan sponsor does not automatically convert the employer into a plan fiduciary." *Moon*, 577 F. App'x at 229 (citing *Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007)). For example, an employer "can be [an] ERISA fiduciar[y] and still take actions to the disadvantage of employee beneficiaries, when they act as employers (*e.g.*, firing a beneficiary for reasons unrelated to the ERISA plan), or even as plan sponsors (*e.g.*, modifying the terms of a plan as allowed by ERISA to provide less generous benefits)." *Pegram*, 530 U.S. at 225. Thus, a functional analysis is necessary to determine if an employer acted as a fiduciary and owed a fiduciary duty regarding particular conduct. *See id.* at 226; *Coleman v. Nationwide Life. Ins. Co*, 969 F.2d 54, 61 (4th Cir. 1992) (explaining that "a court must ask whether a person is a fiduciary with respect to the particular activity at issue."); *Estate of Weeks v. Advance Stores Co.*, 99 F. App'x 470, 476 (4th Cir. 2004) ("[O]ur determination of whether a person qualifies as an ERISA fiduciary is based on a person's job activities rather than job title.").

Here, Plaintiff alleges that Defendants acted as a fiduciary and breached their duty in the following three instances: (1) misleading Plaintiff about his ability to access his benefits; (2) failing to prudently communicate and manage the DB Plan with MassMutual; and (3) terminating the DB

Plan. (ECF No. 1 at 14–15.) As an initial matter, it is well-settled that "an employer's decision whether to terminate an ERISA plan is a settlor function immune from ERISA's fiduciary obligations." *Beck*, 551 U.S. at 101 (emphasis omitted); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (an employer "does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefits plan'"); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999) ("Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries") (quoting *Lockheed Corp.*, 517 U.S. at 890). Thus, since none of the defendants were acting in a fiduciary capacity when deciding to terminate the DB Plan, this alleged conduct cannot support a claim under § 1132(a)(3).

However, the Court is satisfied that the Complaint plausibly alleges that Defendants acted as fiduciaries when advising Plaintiff about his ability to receive his accrued benefits in a "full lump sum on the date of his noticed resignation," (ECF No. 1 at 14 ¶ 71), and "communicat[ing] and manag[ing] the DB Plan with MassMutual," (*id.* at 14 ¶ 72). These alleged fiduciary acts with respect to each defendant are addressed in turn.

### 1. ARI

With respect to ARI, Plaintiff's claim for breach of fiduciary duty under ERISA § 502(a)(3) is adequately pled. First, Plaintiff sufficiently alleges that ARI acted as a fiduciary by providing him information from upper management that allowed him to make an informed decision related to the DB Plan. The Supreme Court and the Fourth Circuit have both recognized that conveying information about plan benefits to a beneficiary in order to assist plan-related decisions can constitute fiduciary activity. *See Varity Corp. v. Howe*, 516 U.S. 489, 505 (1996) (explaining that "intentional representations about the future of plan benefits, thereby permitting beneficiaries

to make an informed choice about continued participation" is a fiduciary activity); *Griggs, v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 379-80 (4th Cir. 2001) (holding a plan administrator acted in fiduciary capacity by communicating with participant about pension benefits). An employer can also be held liable when a plan administrator offers tailored advice concerning benefit decisions. *See Dawson-Murdock*, 931 F.3d at 280; *cf. Advance Stores Co.*, 99 F. App'x at 476 (finding an administrative employee did not act as an ERISA fiduciary when she "simply repeated information that was given to her by upper-management or that had already been inputted into the company's computer database."). In *Dawson-Murdock*, a beneficiary alleged that the employer violated ERISA's fiduciary duties by advising her, through the employer's vice president, that she did not need to appeal the insurer's denial of her benefits claim. *Dawson-Murdock*, 931 F.3d at 280. The Fourth Circuit rejected the employer's argument that the vice president's conduct was taken in an administrative capacity. *Id.* In reaching this conclusion, the court noted that the beneficiary received "tailored advice" from an upper management employee "over a sustained period" and distinguished these facts from *Weeks*, where an employee merely repeated information received from upper management. *Id.* n.15.

Here, Plaintiff sufficiently alleges that ARI acted in a fiduciary capacity, through its employees, by providing information about Plaintiff's ability to access his benefits. First, through its employees, ARI made representations about his ability to access his plan benefits in the future, (ECF No. 1 at 5 ¶¶ 21–22), thereby permitting Plaintiff to make an informed choice about retiring and accessing his benefits. (*Id.* at 4 ¶ 18.) Like in *Dawson-Murdock*, Plaintiff states that he detrimentally relied on tailored information he received from the Board of Directors (the Physician Defendants) and the plan administrator related to the contribution amount he would

13

receive and assurance that it had already been paid. (*Id.* at 5 ¶ 25.) Importantly, unlike the information provided in *Weeks*, the ARI employees did not "simply repeat information that was given to them." Rather, the Complaint alleges that the information was determined and decided at an official Board meeting, (*id.* ¶ 21), and Ms. King informed Plaintiff of her own action of allegedly paying the $142,600.00 from the group funds, (*id.* ¶ 22).

Defendants argue that this conduct was not fiduciary in nature based on the Department of Labor's ("DOL") guidance that clerical or ministerial acts do not implicate fiduciary conduct. 29 C.F.R. § 2509.75-8, D-2. But the context of the DOL's guidance makes clear that such is the case only where the person doing the calculations is not in a policymaking position:

> [A] person who performs *purely* ministerial functions such as . . . [benefit calculations] for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting the management of the plan . . . and *does not have any authority or responsibility to do so.*

*Id.* (emphasis added). Conversely, as for those in policy-making positions, the DOL indicates the following:

> Some offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in section 3(21)(A) of the Act. For example, a plan administrator . . . must, b[y] the very nature of his position, have "discretionary authority or discretionary responsibility in the administration" of the plan . . . . Persons who hold such positions will therefore be fiduciaries.

*Id.* at D-3.

In sum, the 1975 DOL bulletin explains that a person or entity with only ministerial functions in relation to a plan is not a functional fiduciary, whereas a person or entity with discretionary authority or discretionary responsibility in the administration of the plan is a

fiduciary. Here, Ms. King is the plan administrator, tasked with administering and answering questions about the DB Plan, (ECF No. 1 at 2 ¶ 4, 15 ¶ 75; ECF No. 7-4 at 26 (2012 Summary Plan Description)), and the Board is a named trustee, which is responsible for managing the DB Plan assets, (*id.*).[2] Thus, Plaintiff has pled sufficient facts to allow the Court to draw the reasonable inference that ARI, through the Plan Administrator and its Board, acted in a fiduciary capacity in providing information to Plaintiff related to his ability to access his benefits.

Plaintiff also alleges that ARI acted in a fiduciary capacity in managing the DB Plan. A corporation sponsoring an employee benefit plan, such as ARI, can be a fiduciary where it has a substantial role in making investment decisions. *See Davidson v. Cook*, 567 F. Supp. 225, (E.D. Va. 1983), *judgment aff'd without published op*, 734 F.2d 10 (4th Cir. 1984); *Atwood v. Burlington Industries Equity, Inc.*, No. 2:92-cv-00716, 1994 WL 698314 (M.D.N.C. Aug. 3, 1994) (finding that a corporation was sufficiently alleged to be an ERISA fiduciary where it allegedly had the ability to direct the plan trustee's investment of stock, the trustee's borrowing of funds with which to purchase stock, and the trustee to repay funds borrowed from the employer). However, Plaintiff has only alleged that ARI has a fiduciary duty based on its status as a plan sponsor, without any facts indicating ARI exercised any discretionary authority or discretionary control respecting management or administration of the assets. Further, the DB Plan documents shows that ARI did not reserve any fiduciary rights in the DB Plan. ARI assigned the duty of managing funds to the Board and the duty of administering the DB Plan to the Plan Administrator, Ms. King. (ECF No. 7-1 at 41-44, 46-49 (ARI DB Plan).) Thus, Plaintiff has not pled enough facts to allow the Court

---

[2] Even if the Board was not explicitly named a fiduciary in the DB Plan, under the holding of *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 80–81 (1995), an ERISA plan need not specify individuals or bodies within a company to show who has the authority to perform the action on behalf of the corporation.

to draw a reasonable inference that ARI acted in a fiduciary capacity in managing the DB Plan assets.

## 2. Ms. King

As for Ms. King, the Court finds that Plaintiff has sufficiently pled that she was acting as a fiduciary both when providing Plaintiff with information on his ability to access his benefits and managing the DB Plan with MassMutual. Critically, the Fourth Circuit has concluded that a plaintiff need not allege that an ERISA plan administrator and named fiduciary also satisfies the functional fiduciary test to state a plausible fiduciary breach claim under ERISA. *See Dawson-Murdock,* 931 F.3d at 280. As stated previously, the term "named fiduciary" means a fiduciary "who is named in the plan instrument" and has "authority to control and manage the operation and administration of the plan" pursuant to a procedure specified in the plan. *See* 29 USCA § 1102. Here, Ms. King is listed as the plan administrator, who has the authority to control and manage the operation and administration of the DB Plan. (ECF No. 9-3 at 4 (ARI Plan Summary); ECF No. 8 at 2; ECF No. 7-1 at 46.) Thus, Plaintiff has sufficiently pled that Ms. King acted in a fiduciary capacity by providing information on Plaintiff's ability to access his benefits and by managing the DB Plan.

## 3. Physician Defendants

Turning to the Defendant Physicians, the Court finds that Plaintiff has sufficiently pled that Defendant Physicians, as both the Board and shareholders, were acting in a fiduciary capacity when managing the DB Plan with MassMutual. Directors or trustees of the plan are ordinarily deemed to be fiduciaries because they must, by the very nature of their position, have "discretionary authority or discretionary responsibility in the administration" of the plan. 29 CFR

§ 2509.75-8, D-3.   But members of the board of directors of an employer that maintains an employee benefit plan will be fiduciaries only to the extent that they have responsibility for the functions described in section 3(21)(A) of the Act.   *Id.* § 2509.75-8, D-4.   The DOL provided the following example to illustrate:

> [T]he board of directors may be responsible for the selection and retention of plan fiduciaries. In such a case, members of the board of directors exercise "discretionary authority or discretionary control respecting management of such plan" and are, therefore, fiduciaries with respect to the plan.   However, their responsibility, and, consequently, their liability, is limited to the selection and retention of fiduciaries[.]"

*Id.*

Here, the DB Plan explicitly tasks the Board with the responsibility of managing DB Plan assets.   (ECF No. 7-4 at 26; ECF No. 7-1 at 41-44.)   This includes directing the acquisition and disposition of any of the plan's assets, developing a policy for funding the plan, and retaining and consulting with accountants, actuaries, and other professional advisors.   (ECF No. 7-1 at 46.)   Thus, any management—or lack thereof—of ARI's assets was a fiduciary act of the Board.   *See* ERISA § 404(a)(1), 29 U.S.C.A. § 1104(a)(1) (providing that fiduciary misconduct can include acts or omissions).   Therefore, the Complaint alleges sufficient facts to allow the Court to infer that the Board acted in a fiduciary capacity when managing the plan with MassMutual based on its obligation to do so as set forth in the DB Plan.

In addition, Plaintiff has sufficiently pled that Defendant Physicians, as shareholders, were acting in a fiduciary capacity when managing the account.   A corporation is an entity, separate and distinct from its officers and stockholders, and, thus, its debts are not the individual indebtedness of its stockholders.   *See DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir. 1976).   However, courts have declined to recognize this theory when

it would produce "injustices or inequitable consequences." *Id.* (citations omitted). Therefore, "in an appropriate case and in furtherance of the ends of justice, the corporate veil will be pierced, and its stockholders will be treated as identical." *Id.* (citation omitted).

The determination of whether one entity constitutes the alter ego of another is to be made on a case-by-case basis. *Id.* at 684 (finding that a corporation acted as alter ego of its president and holding the president personally liable). Factors to consider include gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities and maintain proper corporate records, non-functioning of officers, control by a dominant stockholder, and injustice or fundamental unfairness. *See Keffer v. H.K. Porter Co., Inc.*, 872 F.2d 60, 65 (4th Cir.1989); *DeWitt*, 540 F.2d 681, 684–87; *see also United States Fire Ins. Co. v. Allied Towing Corp.*, 966 F.2d 820, 828–29 (4th Cir. 1992) (introducing overlap of directors as additional factor).

Here, the Complaint offers facts to support the assertion that Defendant Physicians, as individual stockholders, are liable for the alleged mismanagement of the DB Plan assets. For instance, Plaintiff alleges that in July of 2018 he was assured a lump sum payment of $1,051,210.81 upon retirement. The Complaint goes on to state that in August 2018, because of "a series of miscommunications" with MassMutual dating back five years, the DB Plan was underfunded. Plaintiff purportedly received only $923,698.03 from the DB Plan, which is $127,512.78 less than he was promised, raising questions of insolvency. In addition, Plaintiff's allegations raise questions of injustice and fundamental unfairness. First, Plaintiff alleges that he was required to make a $330,00.00 payment to the DB Plan, which was vastly beyond his allocable share of the $142,600.00. Second, he asserts that Defendant Physicians refused to take alternative paths to funding the DB Plan that would not have resulted in substantial harm to Plaintiff. The

termination date of the DB Plan was the same day that Plaintiff intended to retire, and there are allegations that Plaintiff was denied his final wages. Finally, Plaintiff claims that ARI failed to provide requested documentation which resulted in Plaintiff being unable to access his DB Funds. Accepting Plaintiff's allegations as true, these facts allow the Court to draw a reasonable inference that Defendant Physicians, as ARI shareholders, were acting as fiduciaries when managing the DB Account as an alter ego of ARI.

However, as a final note, the Complaint does not support the assertion that Defendant Physicians were acting in a fiduciary capacity when providing Plaintiff information on his ability to access his benefits. First, the DB Plan vested the authority and responsibility to interpret the plan and answer questions concerning its administration and application to the plan administrator, Ms. King. Second, the Complaint does not allege that the Board provided Plaintiff with information concerning his ability to access his benefits. Rather, the facts averred only provide that the Board determined a contribution total so that Plaintiff could receive his lump sum payment at the time of his departure. (ECF No. 1 at 5 ¶ 21.) This fact standing alone does not allow the Court to infer that the Board intentionally misled Plaintiff regarding his ability to access his benefits.[3]

For these reasons, the Complaint sets forth a plausible claim for relief under § 502(a)(3) of ERISA and, thus, Defendants' motion to dismiss Count Three is **DENIED.**

---

[3] Considering Plaintiff has asserted a plausible claim for breach of fiduciary duty under § 502, Count Four, asserting liability against ARI under the doctrine of *respondeat superior*, likewise, stands. Accordingly, Defendants' motion to dismiss Count Four on the basis that it is derivative of Counts One through Three is **DENIED**.

### D. *Counts Five and Six – Common Law Negligence and Breach of Fiduciary Duty*

Defendants argue that Plaintiff's negligence and breach of fiduciary duty claims asserted in Counts Five and Six relate to the DB Plan and, thus, must be dismissed as preempted by ERISA. (ECF No. 8 at 6.) ERISA's "civil enforcement remedies were intended to be exclusive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). To this end, ERISA contains "express pre-emption provisions" that are "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Id.* at 45–46 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). ERISA's preemption provision broadly provides that "[ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title . . . ." 29 U.S.C. § 1144(a). "The term 'State law' encompasses not only statutes but also common law causes of action." *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 258 (4th Cir. 2005). Further, the phrase "relate to" is "given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Pilot Life Ins. Co.*, 481 U.S. at 47 (quoting *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 739 (1985)).

Turning first to Count Five, Plaintiff argues that his negligence claim "deals specifically with the non-DB Plan Defendants' mismanagement of the DB Plan," not with the DB Plan itself. (ECF No. 14 at 8–9.) However, this is simply nonsensical. Despite Plaintiff's argument to the contrary, Plaintiff explicitly alleges in Count Five that each defendant "failed to exercise reasonable care in the administration of the DB Plan . . . ." (ECF No. 1 at 17 ¶ 87.) He adds that Defendants "miscommunicate[ed] with MassMutual and irresponsibly allow[ed] the DB Plan to

become substantially underfunded to the pecuniary detriment to [Plaintiff]." (*Id.* ¶ 88.) Quite clearly, this allegation relates to the DB Plan and is subject to ERISA's preemption clause.

In addition, the Fourth Circuit has recognized that "when a state law claim is completely preempted as an alternative enforcement mechanism under § 502, it will also be 'related to' an ERISA plan and preempted under § 514." *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 191 n.3 (4th Cir. 2002); *Tingler v. Unum Life Ins. Co.*, No. 6:02-1285, 2003 WL 1746202, at * 4 (S.D. W. Va. Apr. 2, 2003) (claim of negligence was akin to ERISA claim for breach of fiduciary duty and, thus, preempted). Here, Plaintiff's negligence claim may be read as asserting the same claim for enforcement of the fiduciary requirements of ERISA and of Plaintiff's specific ERISA plan. *See supra* III.C; 29 U.S.C. § 1104(a)(1) (requiring an ERISA fiduciary to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries"). Accordingly, Defendants' motion with respect to Count Five is **GRANTED**.

As for Count Six, Plaintiff contends that his common law breach of fiduciary duty claim involves the obligation of good faith and fair dealing that ARI stockholders, directors, and officers owe to one another—issues that only incidentally relate to the DB Plan. (ECF No. 14 at 9–10.) Specifically, he points to the allegations regarding Defendants' denial of his salary, bonuses, and severance pay in support of the proposition that this claim relates to the employment contract rather than the DB Plan. The Court agrees with Defendants that Plaintiff's claim falls within the scope of ERISA's preemption provision but only to the extent he alleges that the DB Plan assets were improperly managed. *See supra* III.C.

However, Plaintiff also alleges that Defendants, "[i]n their negligent and/or intentional mistreatment of [Plaintiff], . . . violated their fiduciary duties . . . by intentionally taking advantage

of [Plaintiff's] departure to his detriment in order for them to benefit." (ECF No. 1 at 18 ¶ 93.) Plaintiff supports this assertion throughout the Complaint with allegations that Defendants "eliminated all remaining salary and bonuses for 2018", (*id.* at 9 ¶ 42), and denied his severance pay, which he was purportedly entitled to under the terms of the employment agreement, (*id.* 9– 10 ¶ 44) in order to fund the DB Plan. Unlike in Count Five, Plaintiff does not simply allege negligent plan administration. Rather, the Complaint alleges that Defendants were not fulfilling their fiduciary function under the employment agreement. The actions Defendants allegedly undertook concerning the denial of Plaintiff's salary, bonuses, and severance pay were entirely unrelated to and outside the scope of their duties under the DB Plan. Thus, Plaintiff's claims do not fall within the purview of ERISA's preemption clause.

Defendants contend that, even if ERISA preemption does not apply, Plaintiff has not adequately stated a claim for fiduciary breach under West Virginia common law principles. A fiduciary duty is "[a] duty to act for someone else's benefit, while subordinating one's personal interest to that of the other person." *Elmore v. State Farm Mut. Auto Ins. Co.*, 504 S.E.2d 893, 898 (W. Va. 1998) (citing Black's Law Dictionary 625 (6th ed.1990)). Under West Virginia law, "[a] violation of the fiduciary relationship may result from oppressive conduct, which is conduct that departs from the standards of good faith and fair dealing which are inherent in the concept of a fiduciary relationship." Syl. pt. 3, *Masinter v. WEBCO Co.*, 262 S.E.2d 433 (W. Va. 1980). The West Virginia Supreme Court of Appeals has recognized that "the officers and directors of a business corporation . . . occupy a fiduciary relationship toward the organization and its shareholders. The same fiduciary relationship exists on the part of the majority shareholders of a business corporation toward its minority shareholders." *Id.* at syl. pt. 2.

As discussed above, Plaintiff alleges throughout his Complaint that ARI, as an entity, and Defendant Physicians, as shareholders, violated their fiduciary duties to Plaintiff by taking actions "to his detriment" and for their own benefit. (ECF No. 1 at 18 ¶ 93, 10 ¶ 45, 11 ¶ 56 (alleging, Defendants "altered the terms of his employment without his consent" and denied wages and severance pay owed to him to fund the DB Plan.) Accepting Plaintiff's well-pleaded factual allegations as true, the Court finds that Count Six sufficiently alleges a claim for common law breach of fiduciary duty. Accordingly, Defendants' motion to dismiss Count Six as preempted by ERISA and for failure to state a claim upon which relief can be granted is **DENIED**.

### E. Count Seven – Breach of Contract

Next, Defendants move to dismiss Plaintiff's breach of contract claim on the basis that ARI fulfilled its obligation and remitted all earned wages and benefits owed to Plaintiff upon his resignation. (ECF No. 8 at 7.) In Count Seven, Plaintiff alleges a breach of contract claim arising from ARI's denial of wages, bonuses, benefits, and severance pay, which he was purportedly entitled to pursuant to the terms of his employment contract. (ECF No. 1 at 18–20 ¶¶ 95–104.) Plaintiff's claim is predicated on two theories: first, on promissory estoppel based on wrongful, constructive discharge of Plaintiff's fixed-term employment contract and, second, on common law breach of contract for wrongful withholding of severance pay entitled to him under the terms of the employment contract. (ECF No. 14 at 10.)

First, in support of his promissory estoppel claim, Plaintiff argues that the parties' reliance on Plaintiff's December 31, 2018, departure gave rise to a term contract of employment that was only terminable with just cause. He avers that ARI breached the term contract on or around November 16, 2018, when Plaintiff was informed that he would not receive his salary for the

remainder of his employment. Defendants deny the existence of a term contract and counter that the only contract at issue in this case is the 2017 at-will employment contract between ARI and Plaintiff.

West Virginia has long adhered to the doctrine of employment at-will. *See Williams v. Precision Coil, Inc.*, 459 S.E.2d 329, 340 (W. Va. 1995). Unless agreed to otherwise, employment is at-will and may be terminated for any reason or no reason at all as long as the termination is not contrary to law. *See id.* However, in some circumstances, an employer may be estopped from claiming that an employment is at-will under the doctrine of promissory estoppel. To establish the existence of promissory estoppel in the employment context, the employee must show that (1) that the employer made a promise and "intended or reasonably should have expected" that such promise "would be [relied or] acted upon" by an employee, and (2) that the employee, "without fault himself, did [rely or] act" on that promise to his detriment. *Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395, 402 (W. Va. 2008) (citing syl. pt. 4, *Barnett v. Wolfolk,* 140 S.E.2d 466 (W. Va. 1965)).

The employment contract in this case purportedly establishes an at-will employment of Plaintiff that could be terminated at any time by either party. (ECF No. 1 at 18 ¶ 96.) With respect to any modifications to his at-will employment, the Complaint alleges that Plaintiff provided written notice of resignation to ARI on April 2, 2018, with a departure date of December 31, 2018. (*Id.* at 4 ¶ 16.) Therein, he stated that he "expected that there would be 'no major changes in current compensation structures and amounts'" and also that he "expected to receive the full Severance Pay pursuant to the Employment Agreement[.]" (*Id.*) According to the Complaint, ARI "accepted [Plaintiff's] notice of resignation, and its terms, and thereafter took

24

steps to make arrangements for his departure . . . ." (*Id.* ¶ 17.) In reliance on ARI's assurances, Plaintiff "made no changes to his existing plan to formerly retire on December 31, 2018." (*Id.* at 5 ¶ 25.) Plaintiff alleges, based on ARI's acceptance of his resignation notice and guarantee to provide wages and benefits owed to him under the contract, that a "for-cause" contract of employment was created for a term through December 31, 2018. (*Id.* at 18 ¶¶ 96–97.) The Complaint goes on to state that, despite the parties' mutual understanding regarding the duration of Plaintiff's employment and the terms and conditions of his salary and benefits, ARI terminated "all forms of compensation" for the "final two months of his term" and threatened to withhold his severance pay, thereby "constructively discharge[ing] [Plaintiff] in November of 2018." (*Id.* at 19 ¶ 99.) Based on these allegations, the Court finds that this claim survives the plausibility standard under a Rule 12(b)(6) motion to dismiss.

The Court similarly finds that the Complaint adequately states a plausible claim for breach of contract under common law. To state a claim for breach of contract, a plaintiff must allege sufficient facts to support the following elements: "the existence of a valid, enforceable contract; that the plaintiff has performed under the contract; that the defendant has breached or violated its duties or obligations under the contract; and that the plaintiff has been injured as a result." *Executive Risk Indem., Inc. v. CAMC*, 681 F. Supp. 2d 694, 714 (S.D. W. Va. 2009) (citation omitted). In the Complaint, Plaintiff references the severance pay provision of the employment contract, which allegedly provides that ARI "shall pay . . . as termination pay an amount equal to . . . four months' salary if such termination occurs after the completion of four years of service from the date of [the employee's] original employment with [ARI], and at least four months' notice is given, calculated from the date of termination." (ECF No. 1 at 19 ¶ 101.) As stated previously,

Plaintiff alleges that notice of his resignation was orally given to ARI on March 28, 2018, and reiterated in writing on April 2, 2018, over seven months before his departure in November, 2018. (*Id.* at 4 ¶¶ 15–16, 19 ¶ 102.) Although he was employed with ARI since 1992, (*id.* at 3 ¶ 10), and provided well over four months' notice, Plaintiff states he was denied severance pay owed to him under the employment contract after his resignation on November 18, 2018, (*id.* 11 ¶ 56). While Defendants contend that Plaintiff did not comply with the notice requirement under the severance provision, the Court need not determine this issue at the pleading stage. Further, the employment contract has not been made a part of the record to allow the Court to address this contention.[4] Therefore, Defendants' motion to dismiss Count Seven is **DENIED**.

### F. Counts Nine and Ten – Conversion and Civil Conspiracy

Defendants also move to dismiss Plaintiff's conversion and civil conspiracy claims under the "gist of the action" doctrine. Defendants argue that liability, if any, for these tort claims stems from Plaintiff's employment contract with ARI and, thus, must be dismissed as tort-disguised duplicates of Plaintiff's breach of contract claim. (ECF No. 8 at 11–12.)

The gist of the action doctrine provides that a tort claim arising from a breach of contract may be pursued only if "the action in tort would arise independent of the existence of the contract." *Secure US, Inc. v. Idearc Media Corp.*, No. 1:08-cv-190, 2008 WL 5378319, at *3–4 (N.D. W. Va. Dec. 24, 2008) (quoting syl. pt. 9, *Lockhart v. Airco Heating & Cooling*, 567 S.E.2d 619 (W. Va. 2002)). The West Virginia Supreme Court of Appeals addressed the vitality of this doctrine

---

[4] For the same reasons, the Court **DENIES** Defendants' motion to dismiss Count Eight of the Complaint, asserting violations of the WVWPCA. (ECF No. 1 at 20–21 ¶¶ 105–109.) In their motion, Defendants rely solely on provisions of the employment contract in support of their proposition that Plaintiff himself breached the employment contract and gave improper notice of resignation. They contend that, due to his breach and non-performance, ARI is excused of its obligation to pay him unearned wages and benefits that he otherwise would have been entitled to under the employment contract. These arguments, again, raise factual issues concerning the terms of the contract that the Court will not resolve at this stage.

in *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568 (W. Va. 2013).

In *Gaddy*, the court held that "recovery in tort will be barred" where any of the following four factors is present:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Id.* at 577 (quoting *Star v. Rosenthal*, 884 F. Supp. 2d 319, 328–29 (E.D. Pa. 2012)). In short, to determine "whether a tort claim can coexist with a contract claim", the court must examine "whether the parties' obligations are defined by the terms of the contract." *Id.* (citation omitted); *CWS Trucking, Inc. v. Welltech Eastern, Inc.*, No. 2:04-cv-84, 2005 WL 2237788, at *3 (N.D. W. Va. Sept. 14, 2005) (stating "[t]he source of the duty is controlling.").

The Court agrees with Defendants that Plaintiff's tort claims against ARI are barred by the gist of the action doctrine. Plaintiff's assertions that ARI made misrepresentations and withheld his wages, benefits, and severance pay to fund the DB Plan, (ECF No. 1 at 22–24), simply recasts Plaintiff's claim for breach of contract. In other words, ARI's alleged liability is directly tied to the duties and obligations assumed in the employment agreement. *Gaddy*, 746 S.E.2d at 586. Therefore, Plaintiff's conversion and conspiracy claims as to ARI are barred by the gist of the action doctrine.

However, with respect to Ms. King and Defendant Physician, the Court finds that, under the facts of this case, the claims may separately survive. Unlike Plaintiff's tort claims against ARI, the conversion and conspiracy claims as to Ms. King and Defendant Physicians do not challenge a breach of duty owed under the employment contract but rather take issue with their

role in the alleged scheme to terminate the DB Plan and convert money owed to Plaintiff to fund the plan. As Plaintiff notes, Ms. King and Defendants Physicians are not parties to Plaintiff's employment contract. Therefore, Plaintiff's tort claims against these defendants arise wholly from their fiduciary duties as shareholders and the administrator of the DB Plan.

Nevertheless, Defendants maintain that the Complaint fails to state plausible conversion and conspiracy claims against Ms. King and Defendant Physicians. West Virginia law recognizes conversion as "any distinct act of dominion wrongfully exerted over the property of another in denial of his rights or inconsistent therewith . . . ." *Rodgers v. Rodgers*, 399 S.E.2d 664, 677 (W. Va. 1990). In particular, Defendants argue that Plaintiff cannot establish that he was lawfully entitled or otherwise had a property interest in any further payment pursuant to the employment contract given his improper notice of resignation. The Fourth Circuit has clarified that "[a] plaintiff cannot bring a claim for conversion unless he has a property interest in and is entitled to immediate possession of the converted item." *Worldcom v. Byne*, 68 Fed App'x 447, 454 (4th Cir. 2003) (internal quotations omitted). However, for the reasons discussed previously, whether Plaintiff was entitled to wages, benefits, and severance pay under the terms of the employment contract is an issue of fact that the Court will not decide at this stage.

Further, to state a claim for civil conspiracy, a plaintiff must establish that two or more persons acted "by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Syl. pt. 8, *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009). Defendants argue that Plaintiff's conspiracy claim fails to satisfy the pleading requirements because he alleges no wrongful acts. Specifically,

Defendants call attention to the allegation that Ms. King and Defendant Physicians formulated a plan to terminate the DB Plan. They argue that, because it was within their discretion to terminate the plan, Plaintiff offers no support for the assertion that it was terminated in an unlawful manner. (ECF No. 16 at 10.) However, the Complaint bases the civil conspiracy claim, not only on Defendants' termination of the DB Plan, but also upon purportedly misleading Plaintiff about the availability of his entire DB Plan account, denying him benefits, wages, and severance pay, and colluding to convert money owed to Plaintiff to the DB Plan. As noted above, these alleged wrongful acts are grounded in their fiduciary duties and, when accepted as true, more than sufficiently demonstrate a claim for civil conspiracy.

For these reasons, the motion to dismiss Counts Nine and Ten is **DENIED**.

### *IV.    CONCLUSION*

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. (ECF No. 7.) Specifically, the Court **GRANTS** Defendants' motion to dismiss Counts One, Two, and Five and **DENIES** the motion as to the remaining counts.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        February 14, 2020

_____

THOMAS E. JOHNSTON, CHIEF JUDGE